*In re* ESTATE OF MARY BIEWALD, Deceased (Clarence Biewald, Petitioner-Appellant, *v.* Anna Marie Jensen, Adm'r of the Estate of Mary Biewald, Respondent-Appellee).

First District (3rd Division)   Nos. 83—1259 through 83—1262 cons.

Opinion filed September 5, 1984.

270

Patrick J. Phillips and Robert R. Charkovsky, both of Jenner & Block,

and Walter A. Christopher, both of Chicago, for appellant.

Christine E. Smith and John J. O'Connor, both of Chicago, for appellee.

JUSTICE WHITE delivered the opinion of the court:

Mary Biewald died intestate on June 26, 1982. She had been married to Clarence Biewald in 1931, but they were legally divorced in 1959. Nevertheless, they continued living together at their residence at 2609 North Neva Street in Chicago until Mary's death. At the time of Mary's death, Mary owned the real estate located at that address. After Mary's death, Anna Marie Jensen, Mary's first cousin once removed, filed a petition for letters of administration, which indicated that Mary's only heirs were certain identified first cousins and first cousins once removed. Thereafter, the circuit court entered an order declaring that the first cousins and first cousins once removed were Mary's heirs and an order appointing Ms. Jensen as the administrator of Mary's estate.

Clarence Biewald filed a petition to amend the order of heirship, alleging that he was the "surviving spouse" of Mary Biewald and requesting that the court declare him to be the sole heir of Mary. A hearing was held on the petition, with Clarence being the only witness. He testified that he married Mary on September 19, 1931, and that he was legally divorced from her in 1959. He also testified that despite the divorce, from the time of their marriage until Mary's death, they lived together continuously and held themselves out to the public as husband and wife. At the conclusion of the hearing the circuit court denied the petition to amend the order of heirship, ruling that Clarence was not the surviving spouse of Mary because their marriage had been terminated by divorce. Clarence now appeals from the order denying the petition.

Clarence also appeals from three orders of the circuit court relating to the real estate located on Neva Street.

The record on appeal shows that Ms. Jensen, the administrator, filed a petition to recover the real estate on Neva Street from the possession and control of Clarence, alleging that Clarence had refused to vacate the first floor apartment of the building located on that property and that he unlawfully withheld possession thereof from her. In response to the petition, Clarence filed an answer and affirmative defenses. The answer admitted that Clarence refused to surrender possession of the premises to petitioner, but denied that his actions were in violation of the parties' legal rights. The first affirmative defense was that the administrator had agreed with Clarence that Clar-

ence could occupy the premises for the remainder of his lifetime. The second affirmative defense was that Clarence was the surviving spouse and only heir of Mary, and that section 20—1(b) of the Probate Act of 1975 (Ill. Rev. Stat. 1981, ch. 110½, par. 20—1(b)) barred the administrator from taking possession of his residence. Subsequent to the filing of the answer and affirmative defenses, Clarence filed a motion for leave to file a jury demand with regard to the petition to recover possession of the real estate. Thereafter, the circuit court entered an order denying Clarence leave to file a jury demand and an order granting a motion by the administrator to strike both affirmative defenses. In the latter order, the circuit court also granted the petition to recover possession of the real estate and ordered Clarence to vacate and surrender possession of the property. Clarence now appeals from the entry of these orders.

The administrator also filed a petition to sell the Neva Street real estate, alleging the existence of a contract for the sale of the property and that it was in the best interest of the estate to sell the property. Clarence filed an answer to this petition, alleging that he was an heir of Mary Biewald. He also alleged that his "claim" against the estate would be irrevocably prejudiced if the sale was for inadequate consideration and that there had been no independent written appraisal of the real estate. The circuit court granted the petition to sell and entered a decree of sale of real estate. Clarence also appeals from the entry of this decree.

I

■ We first consider whether the circuit court erred in denying the petition of Clarence to amend the order of heirship to declare him to be the sole heir of Mary Biewald. The answer to this issue depends upon whether Clarence was the "surviving spouse" of Mary Biewald within the meaning of section 2—1 of the Probate Act (Ill. Rev. Stat. 1981, ch. 110½, par. 2—1). That section provides in part:

> "The intestate real and personal estate of a resident decedent ***, after all just claims against his estate are fully paid, descends and shall be distributed as follows:
>
> * * *
>
> (c) If there is a surviving spouse but no descendant of the decedent: the entire estate to the surviving spouse."

Since his marriage to Mary had been dissolved by court decree in 1959, and the divorce decree completely dissolved their marriage, Clarence was not a surviving spouse at the date of Mary's death. (See *In re Estate of Morrissey* (1976), 38 Ill. App. 3d 981, 983-84, 349

N.E.2d 642.) Clarence candidly concedes that the circuit court followed existing law in denying the petition to have him declared the sole heir of Mary. However, he argues that we can and should change the existing law and that we should find him to be the heir of Mary. In making this argument, he relies on the following language from *Stanley v. Illinois* (1972), 405 U.S. 645, 651, 31 L. Ed. 2d 551, 558-59, 92 S. Ct. 1208, 1212-13:

> "The Court has frequently emphasized the importance of the family. * * *
>
> Nor has the law refused to recognize those family relationships unlegitimized by a marriage ceremony."

In *Stanley*, the Supreme Court held that as a matter of due process of law, an unwed father was entitled to a hearing on his fitness as a parent before his children were taken away from him and that by denying him a hearing and extending one to all other parents whose custody of their children is challenged, the State denied the unwed father the equal protection of the laws guaranteed by the fourteenth amendment to the United States Constitution. Thus, *Stanley*, apart from the quoted language, is of little assistance in disposing of the specific issue presented here.

According to Clarence, a man can be declared to be the heir of a woman in a situation where the man and woman were validly married for approximately 30 years, and then were "technically divorced" but continued to live together and to hold themselves out as husband and wife for over 20 years thereafter, until the woman died. Such a holding would be contrary to the opinion of our supreme court in *Hewitt v. Hewitt* (1979), 77 Ill. 2d 49, 394 N.E.2d 1204. In *Hewitt*, our supreme court held that an unmarried woman's claims against the man with whom she allegedly lived for 15 years in an "unmarried, family-like relationship" for recovery of an equal share of the profits and properties accumulated by the parties during that period were unenforceable because they contravened the public policy of this State disfavoring the grant of mutually enforceable property rights to knowingly unmarried cohabitants. The supreme court stated:

> "The issue, realistically, is whether it is appropriate for this court to grant a legal status to a private arrangement substituting for the institution of marriage sanctioned by the State. The question whether change is needed in the law governing the rights of parties in this delicate area of marriage-like relationships involves evaluations of sociological data and alternatives we believe best suited to the superior investigative and fact-finding facilities of the legislative branch in the exercise of

its traditional authority to declare public policy in the domestic relations field. [Citations.]" 77 Ill. 2d 49, 61.

Although we are not unsympathetic to Clarence's plight, we can neither disregard the strong public policy of this State upholding the institution of marriage nor ignore the clear language of section 2—1 of the Probate Act. If the law in this area is to be changed, we believe that such change should be made by the legislature, or at the very least, by the highest court of this State. (See *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 23-24, 421 N.E.2d 886.) Accordingly, we conclude that the circuit court did not err in denying Clarence's petition to amend the order of heirship.

## II

■ We next consider whether the circuit court erred in striking Clarence's first affirmative defense to the administrator's petition to recover the real estate on Neva Street from the possession and control of Clarence. The first affirmative defense was that the administrator had agreed with Clarence that Clarence could occupy the premises for the remainder of his lifetime. The circuit court found that even if the administrator had made such an agreement with Clarence, the agreement was not binding on Mary's estate. Accordingly, the circuit court struck this affirmative defense.

Section 20—2(a) of the Probate Act (Ill. Rev. Stat. 1981, ch. 110½, par. 20—2(a)) provides that a representative may lease the real estate of an intestate decedent upon such terms and for such length of time as the court may authorize. Section 20—2(b) (Ill. Rev. Stat. 1981, ch. 110½, par. 20—2(b)) provides: "Before leasing real estate, a representative must file in the court which issued his letters a petition setting forth a description of the real estate sought to be leased, its improvements, and the facts and circumstances upon which the petition is founded."

While there is support for the position that a lease made without the approval of the court is void (*Gridley v. Wood* (1917), 206 Ill. App. 505, 510-11), the decision of our supreme court in *Field v. Herrick* (1881), 101 Ill. 110, 114-15, supports the position that a lease made without approval of the court is voidable only and binding until set aside by the court. (See also 5 W. James, Illinois Probate Law & Practice sec. 220.1 (1951).) In *Field*, the court stated:

"But is a lease made by a guardian void unless it is approved by the probate court? We do not think that such a lease can be held void. Sec. 23, chap. 64, Rev. Stat. 1874, p. 561, declares that the guardian may lease the real estate of the ward upon

such terms and for such length of time, not exceeding beyond the majority of the ward, as the county court shall approve. All that can reasonably be claimed under this statute is that a lease made by a guardian may, when it is submitted to the probate court, be rejected and set aside by the court. Such a lease is not, however, void, but voidable merely, —it may be regarded as binding until the court should examine it and refuse approval." 101 Ill. 110, 114-15.

Assuming the existence of the lease agreement and that the lease agreement was voidable only, as opposed to void, we believe that the lease agreement was voidable at the election of the administrator. (*Cf. Dixon National Bank v. Neal* (1955), 5 Ill. 2d 328, 336, 125 N.E.2d 463 ("It is well established that contracts of minors which inure to their benefit are not void, but voidable only at the election of the minor on arrival at maturity").) We further believe that the action of the administrator in moving to strike the first affirmative defense adequately demonstrated the administrator's election to have any lease agreement declared void. Consequently, we hold that the circuit court did not err in granting the administrator's motion to strike the first affirmative defense to the petition to recover real estate.

### III

■ We next consider whether Clarence was entitled to a jury trial with respect to the administrator's petition to recover real estate. We note, initially, that at the oral argument of this case in this court, counsel for Clarence stated that the only issue for the jury was whether or not the alleged agreement should be declared void. Since we have already held that the alleged agreement was voidable at the election of the administrator, and there is no question that the administrator elected to have the agreement declared void, we can perceive no question of fact for the jury as to whether the agreement should be voided.

Moreover, in our opinion a party to a proceeding brought by the administrator of an estate pursuant to section 20—1 of the Probate Act (Ill. Rev. Stat. 1981, ch. 110½, par. 20—1) to take possession of the real estate of a decedent is not entitled to a jury trial.

Article I, section 13, of the Illinois Constitution of 1970 provides: "The right of trial by jury as heretofore enjoyed shall remain inviolate." This constitutional provision "was not intended to confer the right in any class of cases where it had not previously existed and was not intended to guarantee trial by jury in special statutory proceedings unknown to the common law." (*In re Estate of Haines*

(1977), 51 Ill. App. 3d 163, 169, 366 N.E.2d 548; see also *In re Estate of Grabow* (1979), 74 Ill. App. 3d 336, 337, 392 N.E.2d 980.) Since probate proceedings are purely statutory, unless a section of the Probate Act provides a right to jury in a particular probate proceeding, there exists no right to a jury in probate proceedings. (*In re Estate of Grabow* (1979), 74 Ill. App. 3d 336, 337-38.) With these rules in mind, we must consider whether section 20—1 authorizes an action for possession as part of the probate proceedings, and if so, whether section 20—1 provides for a trial by jury.

In *Lescher v. Barker* (1978), 57 Ill. App. 3d 776, 780, 373 N.E.2d 1007, the appellate court stated:

> "Section 20—1 of the Probate Act does not prescribe a particular form of action by which a representative must claim possession of assets allegedly belonging to the decedent's estate. It merely authorizes the representative to 'maintain an action for the possession of or to determine the title to real estate ***.' We believe that this provision gives the representative the authority to bring an appropriate action for possession in the probate division as part of the probate proceedings."

(See also *In re Estate of Hecht* (1978), 63 Ill. App. 3d 539, 540, 379 N.E.2d 1322.) Thus, case law clearly states that section 20—1 of the Probate Act authorizes an action in the probate division as part of the probate proceedings for possession of the real estate of a decedent. Since section 20—1 authorizes an action for possession in the probate proceedings but does not provide for a trial by jury, we conclude that there is no right to a jury in a probate proceeding pursuant to section 20—1 of the Probate Act to take possession of real estate. In this regard, we note that other provisions of the Probate Act clearly provide for a trial by jury (see Ill. Rev. Stat. 1981, ch. 110½, pars. 8—1, 8—2, 16—3), whereas no provision of the Probate Act provides for a trial by jury in an action for possession brought pursuant to section 20—1 of the Act. Accordingly, we conclude that Clarence was not entitled to a jury trial with respect to the administrator's petition to recover real estate.

■ Clarence argues, however, that the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 1 *et seq.*) applies to the proceedings on the petition to recover real estate, and that section 9—108 of the Civil Practice Act clearly provides for a right to a jury trial. Clarence's argument clearly confuses the repealed Civil Practice Act with the new Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 1—101 *et seq.*). There was no section 9—108 in the Civil Practice Act, but there is such a section in the Code of Civil Procedure. (Ill. Rev. Stat. 1981,

ch. 110, par. 9—108.) We analyze Clarence's argument as if Clarence had referred to the Code.

Section 1—6 of the Probate Act (Ill. Rev. Stat., 1982 Supp., ch. 110½, par. 1—6) provides: "The Civil Practice Law and all existing and future amendments and modifications thereof *** shall apply to all proceedings under this Act, except as otherwise provided in this Act." The Civil Practice Law is embodied in article II of the Code of Civil Procedure. Section 9—108 of the Code of Civil Procedure, which provides for trial by jury in forcible entry and detainer proceedings, is clearly contained in article IX, not article II, of the Code. Thus, section 1—6 of the Probate Act does not incorporate section 9—108 of the Code of Civil Procedure.

In addition, *Lescher* makes it clear that the administrator in this case did not have to bring his action for possession under the forcible entry and detainer provisions of article IX of the Code of Civil Procedure. The court stated:

> "We are of the opinion that although the Forcible Entry and Detainer Act provides one remedy by which an executor may seek possession of real property in the probate estate, section 20—1 also contemplates an action filed as part of the probate proceedings and in compliance with the terms of the Probate Act." (*Lescher v. Barker* (1978), 57 Ill. App. 3d 776, 781.)

Since the petition to recover real estate was brought pursuant to section 20—1 of the Probate Act and not pursuant to article IX of the Code of Civil Procedure, we conclude that Clarence was not entitled to a jury trial on the petition to recover real estate.

■ Even if we assumed that Clarence had a right to trial by jury on the petition, we note that under section 2—1105 of the Civil Practice Law (Ill. Rev. Stat. 1981, ch. 110, par. 2—1105), Clarence's demand for a jury trial was not timely filed. Section 2—1105 provides: "A defendant desirous of a trial by jury must file a demand therefor not later than the filing of his answer. Otherwise, the party waives a jury." Clarence did not file a jury demand when he filed his answer and affirmative defenses to the petition to recover real estate. In fact, it was not until 21 days after he filed his answer and affirmative defenses that he filed a motion in the court below for leave to demand trial by jury.

■ In order to obtain an extension of time in which to file a late demand for trial by jury, the party seeking to file the late jury demand must show good cause for his failure to comply with the statute as well as absence of inconvenience or prejudice to the parties litigant or the court. (See *Greene v. City of Chicago* (1978), 73 Ill. 2d 100,

107, 382 N.E.2d 1205; Ill. Rev. Stat. 1981, ch. 110, par. 2—1007; Ill. Rev. Stat. 1981, ch. 110A, par. 183.) Although the circuit court never addressed the question of waiver of the right to trial by jury, we observe that the record does not contain the showing required for leave to file a late jury demand.

## IV

■ The remaining issue is whether the circuit court erred in granting the administrator's petition to sell the Neva Street real estate and in entering the decree of sale of real estate. Clarence's answer objected to the petition to sell on two grounds. First, he alleged that if the court granted his petition to amend the order of heirship, he would be declared Mary's sole heir. Since we have affirmed the order of the circuit court denying the petition to amend the order of heirship, we need not address this objection here. Secondly, he alleged that there had been no independent written appraisal of the real estate, and if the sale of the real estate was for inadequate consideration, his ability to collect his "claim" against the estate would be irrevocably prejudiced. The record, however, does not reveal the nature of Clarence's claim. The circuit court granted the petition to sell over Clarence's objection, because in its opinion, Clarence lacked standing to object to the petition.

Section 20—5(b) of the Probate Act (Ill. Rev. Stat. 1983, ch. 110½, par. 20—5(b)) provides:

> "All persons holding liens against or having an interest in the real estate, or in the oil, gas, coal or other mineral interest or in any part thereof, described in the petition, in possession or otherwise, whose rights are sought to be affected by the order, except the ward must be made parties defendant."

Given our holding that the circuit court properly granted the administrator's motion to strike the first affirmative defense to the petition to recover real estate, on the record before us, we cannot say that Clarence was a person holding a lien against or having an interest in the real estate described in the petition whose rights were sought to be affected by the order authorizing sale of the real estate. (See *In re Estate of Abell* (1946), 395 Ill. 337, 346, 70 N.E.2d 252 ("Creditors of an estate have no right, merely because they are creditors, to be parties to proceedings to sell real estate to pay debts"); *Hall v. Boyd* (1952), 347 Ill. App. 60, 64, 106 N.E.2d 137; *Lewis v. McGraw* (1885), 19 Ill. App. 313, 314-15.) Accordingly, we cannot say that the circuit court erred in granting the petition to sell or in entering the decree of sale of real estate.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

RIZZI, P.J. and McGILLICUDDY, J., concur.