*392
 
 Opinion
 

 NICHOLSON, J.
 

 In this case of first impression, we decide Probate Code section 6122,
 
 [1]
 
 California’s “revocation by divorce” statute, applies where the testator executes a will before marriage naming as beneficiary a person whom he or she later marries and divorces. We also conclude the trial court properly struck evidence of the decedent’s intent regarding disposition of his estate. For these reasons, we affirm the judgment (order) denying probate of the decedent’s holographic will.
 

 Factual and Procedural Background
 

 The decedent, Edward Charles Reeves, married contestant Margaret Lucile Reeves in 1972.
 
 [2]
 
 The couple divorced in 1982. Two children were born during the ten-year marriage: Laura Lucile Reeves and Daniel Edward Reeves, ages twelve and ten, respectively, at the time of Edward’s death. This appeal arises from a will contest filed by Margaret as guardian ad litem for Edward’s minor children.
 

 Edward and petitioner Marlene A. Reeves, then known as Marlene A. Smith, began living together in March 1983. A month later, while he and Marlene were cohabiting, Edward executed a holographic will which stated: “To Whom it Concerns. [¶] In the Event of my death I leave all my properties & money to Marlene A. Smith, [ft] Edward C. Reeves, [¶] 4/10/83.” Marlene kept the will in her possession until Edward’s death.
 

 Marlene and Edward married in May 1984, and subsequently divorced. The judgment of dissolution which terminated the marriage on June 18, 1988, included the following notice: “Please review your will, insurance policies, retirement benefit plans, and other matters you may want to change in view of the dissolution or annulment of your marriage. Ending your marriage may automatically change a disposition made by your will to your former spouse.”
 

 After the divorce, Edward and Marlene continued to live together, sometimes at his residence, and sometimes at hers. In addition to maintaining separate residences, Edward and Marlene kept separate bank accounts. They also experienced various periods of breakup and reconciliation.
 

 
 *393
 
 Marlene never showed the holographic will to Edward after she filed it away. She testified Edward had chest pains shortly before his death and made statements concerning the disposition of his property. Marlene also testified she and Edward discussed having formal wills written, but never did so.
 

 Edward died on March 3, 1990, at age 43. On March 8, 1990, Marlene petitioned for probate of Edward’s April 10, 1983, holographic will. Margaret filed the will contest shortly thereafter. Following the presentation of oral and documentary evidence, the trial court ordered the holographic will revoked pursuant to section 6122 and denied its admission to probate. In a subsequent minute order, the trial court clarified its earlier findings, striking evidence of Edward’s intent as irrelevant. This appeal ensued.
 

 Discussion
 

 I
 

 Section 6122 Revokes the Holographic Will
 

 The parties analyze the language of section 6122 and similar statutes, review legislative history, consider cases from other jurisdictions which interpret Uniform Probate Code section 2-508
 
 [3]
 
 (from which § 6122 is derived), and proffer different conclusions regarding the statute’s applicability here. Marlene maintains section 6122 applies only to a will drawn in favor of a person who was the testator’s spouse
 
 at the time the will was drawn
 
 because: (1) in adopting the revocation by divorce statute, California modified the language of Uniform Probate Code section 2-508; (2) California law on statutory wills, which includes a section on revocation by divorce, defines “spouse” as “the testator’s husband or wife at the time the testator signs a California statutory will” (§ 6202) ;
 
 [4]
 
 and (3) other jurisdictions are split on whether statutes based on Uniform Probate Code section 2-508 apply to wills executed before the testator and former spouse were married. Margaret, obviously, holds contrary views. We reject Marlene’s arguments and conclude the trial court was correct in ruling section 6122 revoked Edward’s holographic will by operation of law.
 

 
 *394
 
 We begin by acknowledging relevant principles of statutory construction. If the language of a statute is clear and unambiguous, it is not necessary to resort to indicia of legislative intent.
 
 (Delaney
 
 v.
 
 Superior Court
 
 (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934].) If the statutory language is ambiguous, “the purpose sought to be achieved and evils to be eliminated have an important place in ascertaining the legislative intent.”
 
 (Freedland
 
 v.
 
 Greco
 
 (1955) 45 Cal.2d 462, 467 [289 P.2d 463].) In addition, the court may consider Law Revision Commission Comments to assist in determining the intent of the Legislature. (See, e.g.,
 
 Shea-Kaiser-Lockheed-Healy
 
 v.
 
 Department of Water & Power
 
 (1977) 73 Cal.App.3d 679, 688 [140 Cal.Rptr. 884]; and
 
 Arellano
 
 v.
 
 Moreno
 
 (1973) 33 Cal.App.3d 877, 884 [109 Cal.Rptr. 421].) Although we conclude the language of section 6122 is clear, we nonetheless address the specific points raised by Marlene in this appeal.
 

 Marlene contends California made “significant changes in the wording of the Uniform Probate Code section that became Section 6122.” She references a single phrase in each statute. The relevant portion of section 2-508 reads: “If after executing a will
 
 the testator is divorced or his marriage
 
 annulled, . . .” (Italics added.) The corresponding part of section 6122 states: “Unless the will expressly provides otherwise, if after executing a will
 
 the testator’s marriage is dissolved or annulled, .
 
 . .” (Italics added.) We fail to discern any material difference in the cited phrases. Our conclusion is supported by the Law Review Commission Comment to section 6122, which explains the 1983 revision as follows: “Section 6122 is the same in substance as Section 2-508 of the Uniform Probate Code. Section 6122 changes the former case law rule that dissolution or annulment of marriage has no effect on the will of either spouse. . . .” (Cal. Law Revision Com. com., Deering’s Ann. Prob. Code (1991 cum. supp.) § 6122, p. 106.)
 

 We also reject Marlene’s argument the definition of “spouse” contained in section 6202 of the Probate Code chapter on statutory wills defines “spouse” for purposes of section 6122, even though the statutory wills section contains' a revocation by divorce provision similar to section 6122. (See § 6226.) “ ‘There is no rule of law that necessarily requires the same meaning to be given to the same word used in different places in the same statute’ . . . .”
 
 (Lambert
 
 v.
 
 Conrad
 
 (1960) 185 Cal.App.2d 85, 95 [8 Cal.Rptr. 56], overruled on other grounds in
 
 Johnson & Johnson
 
 v.
 
 Superior Court
 
 (1985) 38 Cal.3d 243, 254 [211 Cal.Rptr. 517, 695 P.2d 1058].) Indeed, in section 6200 the Legislature specifically provided that the definition of “spouse” as contained in section 6202 governs “the construction of
 
 this chapter
 
 [division 6, part 1, chapter 6, section 6200 et seq.].” (Italics added.) Since section 6122 is not a part of that chapter, it cannot be said that the Legislature intended the definition to apply to section 6122. Rather, the
 
 *395
 
 omission of a similar definition of “spouse” from the Probate Code chapter on revocation and revival of wills supports an inference the Legislature did not intend that definition to apply to section 6122. “ ‘ “Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed.” ’ ”
 
 (Lambert, supra,
 
 at p. 95.)
 

 Marlene’s third argument directs us to other jurisdictions which have considered the question whether revocation by divorce statutes, modeled on Uniform Probate Code section 2-508, apply to wills executed before the testator and former spouse married. In order to promote consistency in the uniform laws, California courts ordinarily adopt the construction given a uniform code section by other jurisdictions, unless the construction is manifestly erroneous.
 
 (AARTS Productions, Inc.
 
 v.
 
 Crocker National Bank
 
 (1986) 179 Cal.App.3d 1061, 1068 [225 Cal.Rptr. 203].) “It is useless to enact legislation having for its object the unification of our laws if the courts of the several states are to place different and opposite constructions as to the meaning of the laws thus enacted.”
 
 (People’s F. & T. Co.
 
 v.
 
 Shaw-Leahy Co.
 
 (1931) 214 Cal. 108, 109 [3 P.2d 1012].)
 

 While other jurisdictions are divided on the question before us, as Marlene notes, a majority of the courts which have addressed the question interpret revocation by divorce statutes based on section 2-508 to revoke dispositions to former spouses, regardless of whether the decedent and former spouse were married at the time the will was executed. In reaching this conclusion, the cases rely primarily on statutory language. (See, e.g.,
 
 In re Marriage of Duke
 
 (Ind.App. 1990) 549 N.E.2d 1096, 1100 (“[C]onsidering the plain language of the statute, ... we conclude that our revocation by divorce statute applies equally when the will is executed before the testator’s marriage.”);
 
 Davis
 
 v.
 
 Aringe
 
 (1987) 292 Ark. 549 [731 S.W.2d 210, 212] (“[T]o adopt [the residual legatee’s] argument would require us to read language into [the statute] that simply is not there.”);
 
 Matter of Will of Reilly
 
 (1985) 201 N.J.Super. 306 [493 A.2d 32, 35] (“On its face, the statute makes no such distinction.”); and
 
 Estate of Bloomer
 
 (Mo. 1981) 620 S.W.2d 365, 367 (“[W]e find that the language of the statute is plain and unambiguous and, therefore, requires no construction, liberal or otherwise.”).)
 

 In re Estate of Pekol
 
 (1986) 148 Ill.App.3d 1 [499 N.E.2d 88, 90], takes a different approach and concludes “[s]trong public policy upholding the institution of marriage prohibits a man from inheriting from a woman whom he ‘technically divorced’ despite their cohabitation until her death.” A New Jersey court states the question more succinctly in
 
 Matter of Will of Reilly,
 
 
 *396
 

 supra,
 
 493 A.2d at page 35: “The scheme, as we perceive it, focuses on the termination of the marriage and not on the status of a spouse at the time the will was made, with the result that
 
 the sequence of the will and the marriage is
 
 irrelevant.” (Italics added.)
 

 We believe this is the proper view. As stated by the Iowa Supreme Court in
 
 Russell
 
 v.
 
 Johnston
 
 (Iowa 1982) 327 N.W.2d 226, 229, “The clear purpose of [the statute] is to provide an automatic revocation of provisions in a will in favor of a spouse after a marriage is dissolved. The legislature obviously recognized that due to the change in the family structure new moral duties and obligations may have evolved subsequent to the execution of the will, and that due to the turmoil of a dissolution an automatic revocation is in the best interest of the testator.”
 
 [5]
 

 We conclude the Legislature had a similar purpose here. Section 6122 was a radical departure from prior law which held dissolution had no effect on the wills executed by either spouse. (See Cal. Law Revision Com. com., Deering’s Ann. Prob. Code,
 
 supra,
 
 § 6122, p. 106.) The Legislature changed the law to protect a spouse who neglects to change his or her will following divorce or annulment. This purpose is no less compelling where, as here, the decedent executes his will before he and his former spouse are married. The significant fact is the couple was married and subsequently divorced. It is this change in legal status which triggers the protections of section 6122. (See
 
 Matter of Will of Reilly, supra,
 
 493 A.2d at p. 35.)
 

 Our conclusion regarding the purpose of section 6122 is reinforced by the Civil Code section 4352 admonition which appeared on Edward’s 1988 judgment of dissolution: “Every judgment declaring a marriage a nullity or dissolving a marriage shall contain the following notice: [¶] Notice: Please review your will, insurance policies, retirement benefit plans, and other matters that you may want to change in view of the dissolution or annulment of your marriage. Ending your marriage may automatically change a disposition made by your will to your former spouse.” The judgment was entered February 24,1988, stating the couple’s marital status was terminated on June 18, 1988, approximately three months later.
 

 Edward was living with Marlene at the time of his death in March 1990. However, following their divorce, Edward and Marlene suffered var
 
 *397
 
 ious periods of breakups and reconciliation, the “turmoil” described in
 
 Russell
 
 v.
 
 Johnston, supra,
 
 327 N.W.2d at page 229. He may or may not have wanted Marlene to inherit his estate. By notifying Edward the holographic will would be revoked by operation of law on the date the marriage was terminated, and, at the same time, alerting him to the effect of the divorce on his prior will, the California statutory scheme gave Edward the opportunity to execute a new will. However, having received the notice, Edward did not write a new will in favor of Marlene or anyone else. By virtue of the trial court’s order denying probate of his holographic will, Edward died intestate.
 

 II
 

 Evidence of Decedent’s Intent Properly Struck
 

 Marlene maintains evidence of Edward’s intent she should receive his entire estate was admissible under Evidence Code section 1260. That section states in part: “Evidence of a statement made by a declarant who is unavailable as a witness that he . . . has or has not revoked his will, ... is not made inadmissible by the hearsay rule.” However, such hearsay testimony may be excluded on grounds of relevance.
 

 As we explained, section 6122 revokes a will automatically if the testator’s marriage is dissolved. The will may be revived only by the testator’s remarriage to the former spouse. (§ 6122, subd. (b).) Here Edward’s holographic will was revoked by operation of law on June 18, 1988, the date the marriage terminated. He never remarried Marlene Reeves. Accordingly, any subsequent statements Edward may have made “right up until the time of his death, that [Marlene] should take his entire estate and evidence of [his] continuing belief that the holographic will was still valid and in full force and effect” were entirely irrelevant. The trial court did not err in striking the testimony which purported to recount such statements.
 

 Disposition
 

 The judgment (order) is affirmed.
 

 Scotland, Acting R J., and Raye, J., concurred.
 

 [1]
 

 Probate Code section 6122, subdivision (a), reads in part: “Unless the will expressly provides otherwise, if after executing a will the testator’s marriage is dissolved or annulled, the dissolution or annulment revokes all of the following: [¶] (1) Any disposition or appointment of property made by the will to the former spouse.”
 

 All statutory references are to the Probate Code unless otherwise indicated.
 

 [2]
 

 Decedent, petitioner, and contestant share the same last name. For purposes of clarity, we use their first names.
 

 [3]
 

 Uniform Probate Code section 2-508 reads in part:
 

 “If after executing a will the testator is divorced or his marriage annulled, the divorce or annulment revokes any disposition or appointment of property made by the will to the former spouse, . . . unless the will expressly provides otherwise.” (8 West’s U.Laws Ann. (1983) Estate, Probate, and Related Laws, § 2-508.)
 

 [4]
 

 Legislation on statutory wills authorized use of two detailed forms of wills. “It was designed to offer persons an opportunity to devise property in an expedient and inexpensive fashion.” (12 Witkin, Summary of Cal. Law (9th ed. 1990) Wills and Probate, § 171, pp. 203-204; see §§ 6200-6248.)
 

 [5]
 

 We reject contrary views expressed in
 
 Matter of Estate of Carroll
 
 (Okla.App. 1988) 749 P.2d 571, and
 
 Codner v. Caldwell
 
 (1951) 156 Ohio 197 [101 N.E.2d 901], two cases cited by Marlene. We view
 
 Carroll
 
 as unpersuasive and poorly reasoned. Unlike the case before us,
 
 Codner
 
 dealt with common law rules under which some jurisdictions found divorce preceded by or coupled with a property settlement to constitute implied revocation of any disposition by the testator to the former spouse.