In the ESTATE OF: Ray
L. PENCE, deceased.

Linda Pence, Appellant,

v.

Sheila Gay Haddock, as Personal
Representative of the Estate of
Ray L. Pence, Respondent.

No. SD 30378.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 30, 2010.

Robert P. Warden, Joplin, for Appellant.

John J. Podleski, Joplin, for Respondent.

WILLIAM W. FRANCIS, JR., Judge.

Linda Pence ("Linda")[1] appeals an order of the Circuit Court of Jasper County, Missouri, Probate Division ("probate division"), revoking all provisions in the "Joint and Mutual Last Will and Testament of Ray L. Pence and Linda C. Pence" ("the Will") in favor of Linda, by operation of section 474.420.[2] This appeal was timely filed pursuant to section 472.160(9). Although the probate division labeled its findings as a "Judgement [sic], Including Findings of Fact and Conclusions of Law," and recited it as final and appealable, this was not a final judgment which would conclude administration of the estate. Because the findings of the probate division are final as to Linda, and effectively revoke her "Application for Letters Testamentary," section 472.160(9) is the section most closely identified with this interlocutory appeal and we decide the merits of this appeal under authority of that section. We affirm the order of the probate division.

### Factual and Procedural History

Linda married Ray L. Pence ("Ray") on August 23, 1978. Linda and Ray each had a daughter by a prior marriage. Linda's

---

1. Because a portion of the involved parties share the same surname, for ease of reference we refer to the parties by their first names. We mean no familiarity or disrespect.

2. All references to statutes are to RSMo 2000, unless otherwise indicated.

daughter, Lisa, was four years old when the parties married and she then lived with them. Sheila Gay Haddock ("Sheila") is Ray's daughter by his prior marriage.

On December 22, 1988, Linda and Ray signed the Will, which included a provision not to revoke the Will unless both parties agreed. The Will directed their property would be left to the surviving spouse and named the survivor as the personal representative.

The pertinent language in the Will provides:

## ARTICLE I

We, RAY L. PENCE and LINDA C. PENCE, the Testators herein, have jointly and mutually agreed to enter into a contract to make this Last Will and Testament and not to revoke it. We do not know which of us will survive the other.... We desire that the survivor should have the property unencumbered for his or her use, benefit, and need, with full powers to sell or otherwise dispose of any property, either real or personal, during his or her lifetime, and to use the proceeds of any sale or disposition of such property as he or she sees fit. At the same time, at the death of the survivor, we wish to make a division of the property whereby our children, SHIELA [sic] GAY HADDOCK and LISA A. FLORES, receive the rest and remainder of our estate in equal shares. Under our contract, each of us promises that if he or she is the survivor, he or she will neither revoke this Will so as to defeat the rights of our heirs nor to make any transactions during his or her lifetime which would defeat the intents of this Will.

After living together continuously for twenty-eight years, Linda and Ray separated on December 11, 2006, and were divorced on February 29, 2008. The dissolution of marriage decree divided all non-marital and marital property, and respectively awarded the property to Ray and Linda free and clear of any claims from each other. Ray was awarded approximately $31,900 more in property than Linda because the trial court found she had squandered money.

Neither Linda nor Ray remarried after their divorce in February 2008.

Ray died on April 22, 2009. On April 27, 2009, Linda filed an "Application for Probate of Will" and "Application for Letters Testamentary"; the Will was filed with the probate division. On June 4, 2009, Sheila filed a motion to dismiss, asserting Linda had no standing in the estate, and an "Application for Letters Administration [sic]." Linda's "Motion for an Order to Secure and Protect the Assets of the Estate and to Take an Inventory of the Contents of the Real Property," filed May 13, 2009, was heard on June 5, 2009. A hearing on all pending applications, motions and objections was conducted on June 22, 2009. Linda testified, over objection, that she and Ray discussed making a will and had an oral agreement concerning the terms in the Will. This discussion was before the Will was executed. Linda testified the basic terms of their oral agreement were that the Will should protect both of them in their old age and, in the case of their death, it should take care of their daughters. The probate division took all pending issues under advisement.

On December 3, 2009, the probate division entered an order labeled "Judgement [sic], Including Findings of Fact and Conclusions of Law." The probate division "determined that a contract to make a will and not to revoke the will prior to the death of either party has been established in accordance with 474.155, but that there was no agreement regarding any potential

divorce between the parties." The probate division ordered that all provisions concerning Linda in the "Last Will and Testament of Ray Pence," including her right to serve as personal representative, were revoked by operation of Section 474.420. The probate division sustained Sheila's motion to dismiss. The order of December 3, 2009, further provided:

> Although RSMo. 474.155 contains specific provisions for the establishment of a contract not to revoke a will, it contains no provision allowing a trial court to ignore the provision of 474.420 where the contractual provisions are contained in a will and the parties are subsequently divorced. This court is obliged to consider the application of both 474.155 and 474.420.

The Will was admitted to probate and Sheila's oral request to amend her application to be appointed personal representative was sustained. The Application for Letters Testamentary, on behalf of Linda, was denied by the probate division. Sheila was appointed personal representative of the Estate of Ray L. Pence. Linda filed her "Motion for New Trial and/or to Set Aside Judgment Pursuant to Rule 75, Rule 78 and to Amend the Judgment Pursuant to Rule 78.07(c)" on December 31, 2009. On February 9, 2010, the probate division denied that motion. Linda filed her notice of appeal on February 17, 2010.

Linda's first point relied on contends the probate division erred in finding all provisions of the Will in favor of Linda revoked by operation of section 474.420, and Linda could not prevail under section 474.155 because section 474.155 fails to address the issue of divorce and, therefore, does not allow the court to ignore its clear and unambiguous language. Linda's second point relied on alleges error in the probate division's finding that a written contract, separate and apart from provisions in the Will, was required for all benefits in favor of Linda to survive because it misapplies the law in that an oral contract conforms to the requirements of section 474.155 if the oral contract is embodied within the will.

Sheila contends the probate division did not err because section 474.420 clearly revokes all provisions in a will executed before dissolution of marriage in favor of the ex-spouse of the testator, and the application of sections 474.155 and 474.420 must both be considered because they do not contradict each other. Because our analysis on each of Linda's points is interrelated, we address both of Linda's points relied on together.

## Standard of Review

■ This Court's review is governed by Rule 84.13(d) and the principles set out in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).[3] The judgment of the trial court must be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32.

## *Relevant Statutes*

The following statutes contained in the probate code are relevant to our analysis. Section 474.420 "Change in circumstances—divorce" states:

> If after making a will the testator is divorced, all provisions in the will in favor of the testator's spouse so divorced are thereby revoked but the effect of the revocation shall be the same as if the divorced spouse had died at the time of the divorce. With this exception, no written will, nor any part thereof, can be

---

**3.** All rule references are to Missouri Court Rules (2010).

revoked by any change in the circumstances or condition of the testator.

Section 474.155 provides:

A contract to make a will or devise, to revoke or not to revoke a will or devise, or to die intestate, if executed after January 1, 1981, can be established only by: (1) Provisions of a will stating material provisions of the contract; (2) An express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or (3) A writing signed by the decedent evidencing the contract. The execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills.

### Analysis

■ The probate division found that although the Will contained an otherwise valid provision not to revoke the Will, the Will did not specifically contemplate whether the parties' agreement would survive a divorce. In applying sections 474.420 and 474.155, the probate division concluded all provisions of the Will in favor of Linda were revoked by operation of section 474.420. Linda contends that because the probate division itself recognized the parties had fulfilled the requirements of section 474.155 in establishing a contract which could not be revoked, the probate division erred in not giving effect to this provision. Linda is essentially arguing that section 474.155 allows her to circumvent section 474.420 in this case. We find no support for this contention.

■ Section 474.420 clearly provides that "[i]f after making a will the testator is divorced, all provisions in the will in favor of the testator's spouse so divorced are thereby revoked." § 474.420. "The divorce activates a 'constructive death' of the testator's spouse vis-a-vis the will." *Matter*

*of Bloomer's Estate*, 620 S.W.2d 365, 367 (Mo. banc 1981). Each pertinent provision of the will is to be construed as though the divorced spouse predeceased the testator. *In the Estate of Beare*, 880 S.W.2d 562, 566 (Mo.App. E.D.1993). The Supreme Court of Missouri further explained:

The legislature decided that a divorce should wipe the slate clean as to the divorced spouse, without the testator having to go to the time and expense of making a new will. We can be sure that in almost every instance a divorced person does not desire a bequest to the former spouse to remain in effect. The legislature realized this, too, and wrote the statute to accomplish what was perceived to be the desired outcome in most divorces.

*Matter of Bloomer*, 620 S.W.2d at 366. The language of section 474.420 is "plain and unambiguous and, therefore, requires no construction, liberal or otherwise." *Id.* at 367.

■ "In construing a statute, the Court must presume the legislature was aware of the state of the law at the time of its enactment." *Nicolai v. City of St. Louis*, 762 S.W.2d 423, 426 (Mo. banc 1988) (internal citation omitted). Section 474.420 became effective January 1, 1956, while section 474.155 became effective in 1981, decades after section 474.420 was codified. Consequently, we must assume the legislature was aware of section 474.420 when it enacted section 474.155. If the legislature had intended to exclude the application of section 474.420 when applying section 474.155, it easily could have added such an exception. It did not.

In support of her position, Linda cites to *Moran v. Kessler*, 41 S.W.3d 530 (Mo.App. W.D.2001), which interpreted the application of section 474.155 after a party to a joint and mutual will had died. We find, however, the facts and issues presented in

*Moran* are distinguishable from this case as the parties' marriage in *Moran* was intact at the time of the wife's death and the application of section 474.420 was not considered by the court.

The probate division also found Linda's reliance on *Rookstool v. Neaf,* 377 S.W.2d 402 (Mo. banc 1964), to be misplaced. Linda argues the probate division misapplied the law in requiring a written contract, separate and apart from the provisions in the Will, in that an oral contract conforms to the requirements of section 474.155 if the oral contract is embodied within the Will. Here, Linda misinterprets the court; it did not require a written contract separate and apart from the provisions in the Will for Linda's benefits to survive section 474.155.

The probate division noted Linda's reliance on *dicta* from *Rookstool,* where the Supreme Court of Missouri held an alleged oral contract not to revoke reciprocal wills was within the statute of frauds, and that the provisions in the decedent's will in favor of the divorced spouse were revoked by the operation of section 474.420. The probate division then quoted *Rookstool:* "The only thing which would save the benefits of these statutorily revoked wills to either the decedent (had he been the survivor) or to the plaintiff is an enforceable *contract* made between them not to revoke the wills." (Emphasis in original.) Although the probate division did recognize the absence of a written contract separate and apart from the provisions in the Will in the case at hand, in the next sentence, the probate division acknowledged "that a contract to make a will and not to revoke the will prior to the death of either party has been established in accordance with 474.155. . . . "[4] It was not requiring a written contract separate and apart from the

provisions of the Will. Rather, what the probate division found to be significant was the fact that "there was no agreement regarding any potential divorce between the parties." In contrast to the contract between Linda and Ray, the alleged oral contract between the parties in *Rookstool* not to revoke the will clearly *contemplated divorce;* it was reached during a conversation regarding their divorce settlement the day before their decree of divorce was granted. 377 S.W.2d at 405.

■ Finally, we note "[t]he law favors a statutory interpretation that tends to avert unreasonable results." *Miles v. Lear Corp.,* 259 S.W.3d 64, 75 (Mo.App. E.D. 2008). If Linda's interpretation of the two statutes is permitted, then Linda would be able to keep the property the court awarded her in the divorce, and also receive the entirety of Ray's remaining estate, unencumbered. This would result in an inequitable windfall in favor of Linda because she already received her share of marital property in the original divorce decree.

■ "Unless two statutes are irreconcilably inconsistent, both must stand." *Nicolai,* 762 S.W.2d at 426 (internal citation omitted). Sections 474.420 and 474.155 are not in conflict; section 474.420 deals with the revocation of will provisions regarding a divorced spouse, while section 474.155 speaks to contractual provisions that may be irrevocable. Therefore, this Court must enforce the law as it is written.

Here, the Will contemplated two possible outcomes—either Linda would survive Ray or she would not. The Will did not contemplate divorce and, in cases like this one, the legislature has given clear direction in section 474.420 that all provisions relevant to the divorced spouse are

---

4. The probate division wrote: "In this case, there is no purported written contract separate and apart from the provisions in the will."

revoked, and the effect of the revocation upon the Will is that the divorced spouse, Linda, is considered to have predeceased the testator. *See Estate of Beare,* 880 S.W.2d at 566. The divorce of Linda and Ray in February 2008 had the effect of cutting off all of Linda's claims to Ray's estate under section 474.420. Thus, the probate division did not err in finding Linda, as the divorced spouse of Ray, is treated as if she predeceased him pursuant to section 474.420 and, consequently, she has no standing in relation to Ray's estate. There is no showing the probate division's order is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. Points I and II are denied.

The probate division's order of December 3, 2009 is affirmed.

SCOTT, C.J., and BATES, J., concur.